OPINION
{¶ 1} Appellant, Leonard Norwood, Jr., appeals from the judgment entry of the Lake County Court of Common Pleas, convicting him on one count of felonious assault.
 {¶ 2} On the night of July 15, 2003, Ted Podolak picked up Gerry Strong at his home for an evening of drinking and playing pool at Safecrackers Lounge in Mentor, Ohio. Over the course of two to three hours, Strong had consumed sufficient alcohol to achieve a "good buzz," while Podolak, "not much of a drinker," had only three beers. Sometime between 12:00 a.m. and 1:00 a.m. on July 16, 2003, the men decided to leave. Strong exited the bar and began conversing with Keith Kidd, a bouncer at Safecrackers. While outside, Strong noticed appellant, who was accompanied by a smaller individual walking toward him.[1] As appellant passed, Strong was struck on the left side of his jaw. Startled and staggered, Strong looked up and saw that appellant was the only individual in the immediate vicinity. Following the initial strike, Strong testified the smaller individual, who was standing in front of Strong at the time, struck him in the eye twice.
 {¶ 3} Podolak testified he was exiting the bar when he observed appellant coming toward the entrance. Podolak stated he observed appellant turn his body and swing his right arm in a punching motion. Podolak admitted he did not specifically observe appellant strike Strong; however, as he proceeded outside, he witnessed Strong holding his jaw.
 {¶ 4} After the assault, Strong re-entered the bar in pain and "spitting" chunks of teeth. Strong testified he ordered a beer when appellant, who had been readmitted into Safecrackers, approached Strong and apologized. According to Strong, appellant claimed he did not know why he struck Strong and stated he would pay Strong's dental bill.
 {¶ 5} Eventually, Podolak dropped Strong off at his home. The next day, Strong awoke in pain, with his jaw swollen such that he could not open his mouth. Strong was treated at the emergency room and was provided follow-up dental care. His injuries included a fractured mandible and the loss of several teeth. Strong required a closed-reduction surgery after which his jaw was wired shut for a period of six weeks.
 {¶ 6} On December 3, 2003, appellant was indicted on one count of felonious assault, a second degree felony, in violation of R.C. 2903.11(A). On December 14, 2003, appellant waived his right to be present at his arraignment and the trial court entered a plea of "not guilty" on his behalf.
 {¶ 7} On January 5, 2005, a bench trial commenced. After the close of the state's case, appellant moved the court for acquittal pursuant to Crim.R. 29. The trial court denied the motion and found appellant guilty as charged in the indictment. On February 14, 2005, appellant was sentenced to three years incarceration.
 {¶ 8} Appellant now appeals and raises three assignments of error for our review:
 {¶ 9} "[1.] The trial court erred to the prejudice of the defendant appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 10} "[2.] The trial court erred to the prejudice of the defendant — appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 11} "[3.] The trial court erred when it sentenced the defendant-appellant to a more-than-the-minimum prison sentence based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant-appellant's state and federal constitutional rights to a trial by jury."
 {¶ 12} Under his first assignment of error, appellant contends the state failed to offer sufficient evidence to sustain a conviction for felonious assault. Specifically, appellant argues the trial court should have entered a judgment of acquittal on the charge because the state failed to prove he was involved in the events leading to Mr. Strong's injuries.
 {¶ 13} Crim.R. 29 states, in pertinent part:
 {¶ 14} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 15} When reviewing whether the evidence is sufficient to support a criminal conviction, an appellate court examines the evidence and determines whether it, if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 273. Circumstantial evidence and direct evidence inherently possess the same probative value, even when used to prove essential elements of an offense. Id. at 272.
 {¶ 16} In the instant matter, appellant was convicted of felonious assault pursuant to R.C 2903.11, which provides:
 {¶ 17} "(1) No person shall knowingly do either of the following:
 {¶ 18} "(A) Cause serious physical harm to another or to another's unborn;"
 {¶ 19} Accordingly, the state was required to prove appellant knowingly caused serious physical harm to the victim, Mr. Strong.
 {¶ 20} Appellant does not dispute that Strong suffered serious physical harm as a result of an attack occurring at Safecrackers in the early morning hours of July 16, 2003. Rather, appellant argues the state failed to offer evidence that would prove, beyond a reasonable doubt, he was the party responsible for Strong's injuries. In support, appellant points out that neither Podolak nor Strong actually witnessed appellant strike Strong.
 {¶ 21} Appellant's argument attacks the lack of direct, eyewitness testimony specifically identifying him as Strong's assailant. However, the lack of direct evidence identifying appellant as the assailant does not necessarily impugn the verdict. To the contrary, the existence of any fact or element may be demonstrated by circumstantial evidence, provided the circumstances shown fairly and reasonably warrant the conclusion reached or that conclusion is a natural inference from the facts proved. See, 42 Ohio Jurisprudence 3d, Evidence and Witnesses, Section 176.
 {¶ 22} Here, the state presented significant circumstantial evidence demonstrating appellant was the party responsible for striking Strong in the jaw. Mr. Strong testified he exited the bar before Podolak and was conversing with one Keith Kidd when he observed appellant and another smaller gentlemen. According to Strong, appellant walked toward him on his left side; as appellant passed, Strong was suddenly struck on the left side of his face. Strong then "staggered toward the side door * * * and I looked back, [appellant] was the only one standing there. Then, all of a sudden the other guy hit me two times in the eye." Strong testified he knew appellant's compatriot did not throw the initial strike because the smaller individual "was standing in front of [him]" when he was struck. Furthermore, Strong noted the smaller individual struck him twice in the right eye with significantly less force than that of the first blow.
 {¶ 23} Moreover, Ted Podolak testified that he was leaving the bar when he observed appellant coming towards the entrance. While he did not observe appellant actually strike Strong, Podolak testified he observed appellant turn and swing his right arm in a punching motion. Immediately thereafter, he saw appellant holding the left side of his jaw.
 {¶ 24} Furthermore, after the incident, Strong re-entered the bar and, in an attempt to "calm down," ordered a beer. A short time later, Strong testified appellant approached him and "[h]e apologized, didn't know why he hit me, he apologized. Then he said he'd make it good, pay my dentist bill."
 {¶ 25} While neither witness specifically observed appellant strike Strong, we believe the state put forth sufficient circumstantial evidence to prove, beyond a reasonable doubt, appellant was the attacker who broke Strong's jaw. Appellant's first assignment of error is overruled.
 {¶ 26} Under his second assignment of error, appellant argues his conviction is against the evidential weight. When reviewing a challenge to a criminal conviction based upon the weight of the evidence, an appellate court reviews:
 {¶ 27} "`the entire record, weights the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Newton (June 27, 1997), 11th Dist. No. 96-L-058, 1997 Ohio App. LEXIS 2802, 14, citing, Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 28} Under his second assignment of error, appellant directs this court's attention to certain inconsistencies in Strong's and Podolak's testimony and again underscores the fact that no witness positively identified him strike Strong.
 {¶ 29} With respect to the alleged inconsistencies, appellant notes Strong told the police that Podolak was standing outside with him when he was struck. However, at trial, both Strong and Podolak testified Podolak was inside at the time of the incident. Although Strong offered two inconsistent versions regarding his recollection of Podolak's location at the time of the assault, we do not believe the inconsistency undermines the probative force of his testimony as a whole.
 {¶ 30} Appellant also points out specific credibility issues in Podolak's testimony. In particular, at a previous hearing, Podolak testified he "thought" he was at the bar when Strong arrived; however, at trial, Podolak testified he drove Strong to the bar. While ostensibly inconsistent, Podolak explained at trial that it was customary for him to meet Strong at Safecracker's to play pool. Again, we do not think this minor inconsistency significantly militates against Podalak's credibility when viewed in relation to the evidence as a whole.
 {¶ 31} With respect to appellant's identification, the trial court stated on record:
 {¶ 32} "* * * there is evidence which is credible and uncontroverted that Defendant approached the victim and passed him on the victim's left side. There is evidence that within a split second of that passing, the victim experienced and felt a blow to his left cheek and side of his face. There is evidence that after the victim staggered a few feet forward to the right, that he looked back and observed the Defendant and only the Defendant in the vicinity and proximity of the area where that blow had been received.
 {¶ 33} "There is also evidence that the witness Podolak observed one who looked like the Defendant swing his right arm as if throwing a punch. There is also evidence that the witness Podolak observed the victim 20 to 30 seconds later holding the left side of his face. And there is evidence that in a conversation back inside the bar immediately following the incident, that the Defendant apologized to the victim, said he did not know why he had hit the victim, and offered to pay his dental bills. And the Court did take the time to go back and have the court reporter reproduce that portion of the proceedings to make sure with respect to that apology because there was some disagreement here near the close of trial as to what the exact verbiage of that testimony was, and the Court had gone back and looked at that.
 {¶ 34} "From all the evidence and after applying reason and common sense, the Court concludes that it was the Defendant, Leonard Norwood, Jr., who knowingly struck Gerry Strong on or about July 15th or July 16th of the year 2003, and in the City of Mentor, Lake County, Ohio, and caused him serious physical harm. The Court is firmly convinced of the truth of [the] charge, and therefore finds the Defendant guilty of the crime of felonious assault."
 {¶ 35} In arriving at its conclusion, we do not think the court lost its way. After a careful review, we believe the verdict is supported by the manifest weight of the evidence. The court did not err in convicting appellant of felonious assault. Thus, appellant's second assignment of error is without merit.
 {¶ 36} In his third assignment of error, appellant argues his sentence runs afoul of the United States Supreme Court's holding in Blakely v. Washington (2004), 542 U.S. 296. In particular, appellant contends R.C. 2929.14(B) is unconstitutional because it requires the trial court to make certain factual findings neither proved to the jury nor admitted by the defendant before it may impose more than the minimum sentence.
 {¶ 37} Appellant was convicted of felonious assault, a felony of the second degree. The minimum sentence for a felony of the second degree is two years. However, after finding the minimum sentence would demean the seriousness of the offense and not adequately protect the public from future crime pursuant to R.C.2929.14(B), the trial court sentenced appellant to a three year term of imprisonment.
 {¶ 38} The Supreme Court of Ohio recently held R.C.2929.14(B) unconstitutional and severed its provisions from Ohio's felony sentencing scheme. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, at paragraphs one and two of the syllabus. Accordingly, we sustain appellant's third assignment of error and remand the matter for re-sentencing. On remand, appellant may argue for a reduction in his sentence. However, we point out, as did the court in Foster, nothing prevents the state from seeking a greater penalty than that originally sought. Id. at ¶ 105, citing, United States v. DiFrancesco (1980),449 U.S. 117, 134-136.
 {¶ 39} Appellant's third assignment of error has merit.
 {¶ 40} For the above reasons, appellant's first and second assignments of error are overruled; appellant's third assignment of error has merit. The judgment of the Lake County Court of Common Pleas is affirmed in part, reversed in part, appellant's sentence is vacated, and the matter is remanded for re-sentencing.
Diane V. Grendell, J., concurs, Colleen M. O'Toole, J., concurs in judgment only.
[1] Strong testified he had met appellant several months earlier and was on "friendly" terms with him; in fact, Strong indicated he and appellant may have exchanged salutations at the bar that evening.